UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA CLAY, | ) | Case No. 1:09-CV-00204 |
| | ) | |
| Petitioner, | ) | Judge Patricia A. Gaughan |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| MARGARET BRADSHAW, Warden, | ) | (resolving ECF #1) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

The matter of Joshua Clay's petition under 28 U.S.C. §2254 has been referred to the undersigned for report and recommended disposition.   On February 13, 2007, Petitioner, Joshua Clay, pled guilty to one count of gross sexual imposition, nine counts of unlawful conduct with a minor, and one count of pandering sexually-oriented material involving a minor in the Cuyahoga County Court of Common Pleas.  (Docket #5, Exhibit 3).  The trial court accepted Mr. Clay's plea, found him guilty, and sentenced him to a ten-year prison term.  (Docket #5, Exhibit 4).  The court also found that Mr. Clay was a sexual predator, pursuant to Ohio Revised Code §2950.09.  (Docket #5, Exhibit 5).

On April 24, 2007, Mr. Clay appealed his conviction to the Ohio Eighth District Court of Appeals.  (Docket #5, Exhibit 6).  Mr. Clay assigned seven errors on appeal.  Mr. Clay argued that he was: (1) denied his right to a fair trial/tribunal; [1] (2) denied his due process rights when the trial court accepted a plea that was not made knowingly, voluntarily, and intelligently; (3) denied his due

---

[1]  Mr. Clay's assignment of error stated that he was denied a right to a fair trial; however, the argument portion of his brief states that he was denied the right to a fair tribunal during sentencing.  The state appellate court considered the issue as argued in the brief.

2

process rights when he was sentenced to consecutive sentences without consideration of the statutory criteria; (4) denied his due process rights when the trial court imposed sentence based upon judicial fact-finding; (5) denied his due process rights when he was convicted of an offense, which infringed on the marital relationship;(6) denied his due process rights when he was determined to be a sexual predator without evidence; and (7) denied his due process rights when he was deemed a sexual predator. (Docket #5, Exhibit 7).  On March 27, 2008, Mr. Clay's conviction was affirmed by the Ohio Eighth District Court of Appeals.  (Docket #5, Exhibit 9).  On April 7, 2008, Mr. Clay filed a motion for reconsideration with the appellate court, which was denied on April 21, 2008. (Docket #5, Exhibits 10, 11).  On May 23, 2008, Mr. Clay appealed his conviction and sentence to the Ohio Supreme Court alleging the same errors previously appealed.  (Docket #5, Exhibits 12, 13). The Ohio Supreme Court denied Mr. Clay leave to appeal and dismissed his case "as not involving any substantial constitutional question."  (Docket #5, Exhibit 14).


Mr.  Clay timely filed the instant petition on January 29, 2009, under 28 U.S.C. §2254, and presents five grounds for relief:


**Ground for Relief No. 1**: Sixth and Fourteenth Amendment.  (Docket #1 at 4).

In support of this ground, Mr. Clay states that he "was denied a fair tribunal as the trial judge, during the hearing relied on its own personal opinion and predilection."  *Id.*

**Ground for Relief No. 2**: Fourteenth Amendment.  *Id.*

In support of this ground, Mr. Clay states that he, "entered pleas of guilty to various counts of the indictment[;] however[,] those counts of the indictment were never determined by the court

3

as to whether petitioner understood the nature of the offenses before entering his pleas." *Id.*

"Therefore, his pleas of guilty were unconstitutional." *Id.*

**Ground for Relief No. 3**: Sixth Amendment. (Docket #1 at 5).

In support of this ground, Mr. Clay states that he, "was sentenced to a sentence of ten (10) years by the court [but] [t]he court failed to consider the relevant statutory criteria and imposed a sentence based upon judicial factfinding where none of the facts authorized in the sentence imposed by the court were either alleged in the indictment nor [sic] admitted during the course of the proceedings." *Id.*

**Ground for Relief No. 4**: Fourteenth Amendment. *Id.*

In support of this ground, Mr. Clay states that he, "was convicted and sentenced of offenses which occurred during the marital relationship [and] [t]he matters between a husband and wife are privileged and a court may not punish an offender not [sic] may the state make these criminal offenses which are infringing upon the marital privilege which is constitutionally guaranteed." *Id.*

**Ground for Relief No. 5**: Fourteenth Amendment. *Id.*

In support of this ground, Mr. Clay states that he, "was denied due process of law when the court determined him to be a sexual predator where the court did not hear or consider any evidence in its determination that a petitioner was a sexual predator and was not based upon a finding as to the various elements needed to reach that conclusion." *Id.*

## I.    *FACTUAL BACKGROUND*

The facts that formed the basis of the Mr. Clay's conviction were set forth in *State v. Clay,* 2008 WL 802507 (Ohio App. 8 Dist.), at ¶¶2-10 ("State Court Decision").

The record reflects that in July 2003, then 13-year-old K.B. began hanging out with
Clay, who was 19 years old, in the basement of the home he shared with his mother.

4

Their friendship evolved into a sexual relationship. In November 2003, Clay took nude photos and videos of K.B. and of both of them engaging in sexual activity; he later posted the photos on the Internet.

In May 2004, Detective Michael Tulcewicz of the Brooklyn Heights Police Department went to Clay's home to investigate reports of sexual contact between Clay and K.B., but Clay denied that K.B. was there. Shortly thereafter, Clay learned that K.B. was pregnant and on June 4, 2004, with the permission of K . B.'s mother, Clay and K.B. were married in South Carolina. Several days later, after they returned to Ohio, Clay took K.B. to have an abortion. Clay and K.B. then moved into the basement of Clay's mother's home where thereafter, according to Detective Tulcewicz, K.B. 'was held basically hostage.'

In August 2005, K.B. escaped to Pennsylvania. In September 2005, she was admitted to a hospital for psychological evaluation; shortly thereafter she contacted the Brooklyn Heights Police Department and reported that Clay had physically, mentally, and sexually abused her.

In October 2005, Brooklyn Heights police executed a search warrant on Clay's residence. In February 2006, they confirmed that the computer discs seized during the search contained pornographic material involving Clay and K.B.

In the meantime, Clay had gone to Pennsylvania to search for K.B. FN2 While there, he met 15-year-old S.C. Despite being warned by S.C.'s father to stay away from S.C., Clay communicated with her via cell phone and email, took her on several dates, and had sex with her.

FN2. According to K.B.'s grandmother, K.B. is now afraid to go to school, because Clay tracked her down and found her there, triggering what the grandmother called a 'psychotic episode.' K.B. has since been diagnosed with post-traumatic stress syndrome.

On July 5, 2006, Detective Tulcewicz received a call from S.C.'s father, in which he informed Tulcewicz that S.C. was missing and believed to be with Clay. Upon questioning, Clay admitted that he knew S.C. and had communicated with her via cell phone and email, but denied that he knew where she was.

On July 7, 2006, after further investigation, Detective Tulcewicz found S.C. and Clay at a Greyhound bus station. Clay had purchased a one-way bus ticket for S.C., under a fictitious name, to Las Vegas. It was subsequently learned that Clay had driven to Pennsylvania on July 5, 2006, picked up S.C., taken her to Ohio without her parents' permission, and then got her a room at a hotel, where he had sex with her several times.

5

After Clay was indicted and released on bond, the prosecutor's office obtained a videotape of Clay's 'Late Night with Fapster' program, an Internet show he hosted every night. On the video, Clay, who is extremely intoxicated, masturbates for his viewers. He also states, 'I'll admit it. * * * I kidnapped the bitch, her name is Samantha,' and 'I f-ed her hard on this table.' According to S.C.'s father, S.C. now goes to therapy every week and is on medication 'so that she can cope.'

In August 2006, a Cuyahoga County Grand Jury returned a 25-count indictment against Clay, charging him with offenses of gross sexual imposition, illegal use of a minor in nudity-oriented material or performance, unlawful sexual conduct with a minor, and pandering sexually-oriented matter involving a minor. Clay subsequently pled guilty to an amended count one of gross sexual imposition, counts ten, 11, 12, 14, 15, 16, 17, 18 and 19, unlawful sexual conduct with a minor, and count 13, pandering sexually-oriented matter involving a minor. The trial court sentenced Clay to ten years incarceration and classified him as a sexual predator.

## II.    *LAW AND ANALYSIS*

For purposes of Federal collateral review, all claims adjudicated on their merits by state

courts are governed by 28 U.S.C. §2254(d)(1) and (2), which extends the permissible range of

Federal review of state convictions follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim  - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (emphasis supplied).

A district court has very restricted Congressionally-granted powers for review under 28

U.S.C. §2254(d).  See *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000)*; Bell v. Cone*, 535 U.S. 685

(2002). The habeas applicant must show either that the state decision was "contrary to" or an

"unreasonable application" of Supreme Court precedent.   The phrases "contrary to" and

6

"unreasonable application" are not the same.   Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [this] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Williams,* 529 U.S. at 405-06; *Mitchell v. Esparza*, 540 U.S. 12, 15 (2003).   Under those circumstances the Supreme Court has held that the federal court on habeas review may grant the writ. *Id.*   The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta,* of the U.S. Supreme Court at the time of the relevant state court decision. *Lockyer*, 538 U.S. at 71-72; *Williams*, 529 U.S. at 412; *Bell*, 535 U.S. at 698.

Under the "unreasonable application" standard, "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005); *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).   This includes both the state court's refusal to extend and/or its unreasonable extension of existing legal principles from Supreme Court precedent to new contexts.   See *Williams*, 529 U.S. at 407.   The unreasonable application of Supreme Court precedent must, however,  be "objectively" unreasonable. *Id.* at 409; *Wiggins,* 539 U.S. at 520-21.   When the state court has rendered a decision, the federal reviewing court  may not grant the writ in its "independent review of the legal question." *Lockyer*, 538 U.S. at 75.   When there has been an "unreasonable application" of clearly established federal law, then no deference is due to the state decision and the federal court is free to resolve the claim independently.

1.      **Grounds for Relief 1**

7

Mr. Clay asserts that the trial judge relied upon his own personal opinion and predilection when he sentenced Mr. Clay.  (Docket #1 at 3, Docket #6 at 1).  Respondent asserts that Mr. Clay is procedurally defaulted on this ground because he failed to make a contemporaneous objection during sentencing thereby precluding the state court of appeals from reviewing the merits of his claim.  (Docket #5 at 13-14).  Respondent also notes that Mr. Clay has failed to establish cause for his procedural default or to present evidence of actual innocence.  (*Id.* at 15).

In addressing this issue on appeal, the Ohio Eighth District Court of Appeals stated:

In his first assignment of error, Clay contends that the trial judge was not impartial at his sentencing hearing. Specifically, Clay contends that the trial judge lost her impartiality when his mother attempted to defend him at the sentencing hearing. The judge told Clay's mother that she found "it appalling that you allowed him to have this little Internet shenanigans [sic] going on down there," and that "[a]s a woman, I don't know how you can stand there and tell me that it's okay for an adult parent to let a 20-year-old boy live with a 14-year-old girl in the basement and be on the Internet masturbating to people every night across the world." The judge then continued:

'So no, I don't respect you. I'm sorry, but I don't respect you and I don't respect this conduct because you have facilitated this and you are part of the victimization of these people. Do you understand that? Your behavior with your son helped victimize their children. You owe them an apology, do you even understand that? Do you or not? * * * You were the gatekeeper and you didn't do your job. So I frankly don't want to hear anything else from you. You can take your seat.' According to Clay, these statements indicate that the trial judge lost her objectivity and impartiality, thereby denying him a fair tribunal.

Clay failed to raise any argument regarding the judge's impartiality in the trial court and thus has waived all but plain error. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43. Plain error is an obvious error or defect in the trial court proceeding that affects a substantial right. *See, generally, State v. Long* (1978), 53 Ohio St.2d 91, 94; *see, also,* Crim.R. 52(B). An alleged error is plain error if the error is 'obvious' and but for the error, the outcome of the proceeding 'clearly would have been otherwise.' *State v. Barnes*, 94 Ohio St.3d 21, 28, 2002-Ohio-68; *Long*, supra.

8

It is well-settled that a criminal proceeding before a biased judge is fundamentally unfair and denies a defendant due process of law. *State v. LaMar*, 95 Ohio St.3d 181, (2002), at ¶ 34. 'Judicial bias is a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as distinguished from an open state of mind which will be governed by the law and the facts.' *Id.*

Despite the trial judge's comments to Clay's mother, the record reflects that the trial judge was not biased in this case. A review of the entire sentencing hearing indicates that the trial judge carefully reviewed the facts and allegations regarding Clay's crimes before imposing sentence. She asked questions of the people who made statements, and after hearing the statements and arguments, before sentencing Clay, she told him, 'I will be very frank with you. I have gone back and forth as I have listened to you people as far as how much time you should get. I made it clear to both attorneys before we started that the total term of 23 years was absolutely not reasonable. * * * However, I also believe a minimum term is insufficient.'

The record indicates that the trial judge did not exhibit a 'hostile feeling or spirit of ill will' toward Clay nor did she have a 'fixed anticipatory judgment.' She was understandably appalled by the actions of Clay's mother in facilitating Clay's offenses, but the record does not reflect that this affected her objectivity towards Clay. As we find no plain error, Clay's first assignment of error is overruled.

(State Court Decision at ¶¶18-23).

A petitioner has procedurally defaulted when he or she,

fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.

*Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000), *citing Wainwright v. Sykes*, 433 U.S. 72, 80,

(1977); *Picard v. Connor*, 404 U.S. 270, 275-78 (1971).  However, a ground may only be dismissed

due to procedural default if the state procedure satisfies the standards set forth in *Maupin v. Smith*,

785 F.2d 135, 138 (6th Cir.1986). *See Jells v. Mitchell,* 538 F.3d 478, 488 (6th Cir. 2008). [2]

---

[2] "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must decide whether the state courts actually enforced the state procedural sanction. Third, the court must

9

Respondent argues that the long-standing contemporaneous objection rule prevented the appellate court from addressing the merits of Mr. Clay's claim, *citing Osborne v. Ohio*, 495 U.S. 103, 124 (1990) and *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170 (1988). (Docket #5 at 13).  Respondent further states that "if such waiver occurs, the claim may only be reviewed for 'plain error.'" (*Id.*, *citing State v. Mason*, 82 Ohio St.3d 144, 162 (1998)).  Moreover, Respondent notes, "[p]lain error review by a state appellate court does not open a claim to consideration on federal habeas when the state court rests its decision on a procedural bar."  (Docket #5 at 14, *citing Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000); *Harris v. Reed*, 489 U.S. 255, 257 (1989)). Respondent is correct.

Federal collateral review is barred due to the state appellate court's decision, which was made with clear and express reliance on Mr. Clay's failure to object to the conduct of the trial judge during sentencing.  *See Coleman v. Thompson*, 501 U.S. 722 (1991); *Maupin*, 785 F.2d at 138. Here, on post-conviction review, the state appellate court found that there was no contemporaneous objection in the record by Mr. Clay related to the trial judge's "personal opinion and predilection." The state appellate court then proceeded to review the argument under plain error analysis.  *See* State Court Decision at ¶¶18-23).

---

decide whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." The fourth factor, whether the petitioner has established cause for his failure to follow the rule and actual prejudice from the alleged constitutional error, applies when the first three have been established. *Jacobs v. Mohr*, 265 F3d 407, 417 (6th Cir. 2001), *quoting Maupin*, 785 F.2d at 138. *See also Beuke v. Houk*, 537 F.3d 618, 630 (6th Cir. 2008).

10

Ohio's contemporaneous objection rule is an adequate and independent state rule and a defendant who fails to object waives review of the issue both in state court and via federal habeas corpus review, absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Nields v. Bradshaw*, 482 F.3d 442, 451 (6th Cir. 2007); *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Williams v. Bagley*, 380 F.3d 932, 967-68 (6th Cir. 2004); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000). Subsequent plain error review by Ohio state courts does not waive this procedural default. *See Girts v. Yanai,* 501 F.3d 743, 755 (6th Cir. 2007); *Keith*, 455 F.3d at 673; *Williams*, 380 F.3d at 968-69; *Seymour v. Walker*, 224 F.3d 542, 547 (6th Cir. 2000). Further the subsequent unexplained denial of appeal by the Ohio Supreme Court is presumed to rest on the continuation of this procedural default when the state supreme court decision is unexplained. *See Mason v. Mitchell,* 320 F.3d 604, 635 (6th Cir. 2003); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). This presumption carries through notwithstanding the Ohio Supreme Court's dismissal on the basis of no substantial constitutional question. *See Taqwiim v. Johnson,* 229 F.3d 1154 (6th Cir. 2000), *citing Levine v. Torvik*, 986 F2d. 1506, 1517 n.8 (6th Cir. 1993) *cert. denied*, 509 U.S. 907 (1993), abrogated on other grounds by *Thompson v. Keohane*, 516 U.S. 99 (1995); *Hinkle*, 271 F.3d at 244; and see *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). Accordingly, the first three factors from *Maupin* have been established and Mr. Clay's first ground for relief is subject to procedural default absent a showing of the fourth *Maupin* factor of cause and prejudice or actual innocence.

In order to overcome a procedural default a petitioner must demonstrate both cause and prejudice, and the failure to establish either is sufficient to bar the claim. *Hall v. Vasbinder,* 563 F.3d 222, 236 (6th Cir. 2009), *citing Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Dretke v. Haley*, 541 U.S. 386, 392 (2004); *Wainwright*, 433 U.S. at 877. Generally, "[w]hen a 'state prisoner has

11

defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice ... or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Bonilla v. Hurley*, 370 F.3d 494, 497, *quoting Coleman*, 501 U.S. at 750; and *see Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *House v. Bell*, 547 U.S. 518, 536 (2006);  *Wainwright*, 433 U.S. at 87.

 "Cause" is a legitimate excuse for the default and "prejudice" is the actual harm resulting from the alleged constitutional violation. *Jamison v. Collins*, 291 F.3d 380, 386 (6th Cir. 2002). To establish "cause" barring ineffective assistance of counsel, a petitioner must present a substantial reason based on "some objective factor external to the defense." *Murray*, 477 U.S. at  488; *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999).

Mr. Clay has not attempted to demonstrate cause or prejudice.  It is true that ineffective assistance of trial counsel may constitute "cause" to excuse procedural default. See *Murray, supra*; *Edwards*, *supra; Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002);  *Girts*, 501 F.3d at 756, . However, Mr. Clay did not assert in his petition or on appeal that his trial counsel was ineffective for failing to lodge an objection to the trial judge's conduct at sentencing. [3]

The final issue is whether there has been a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent.  See *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Murray*, 477 U.S. at 495-96; *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To succeed, Mr. Clay would need to present "new reliable evidence. . . that was not presented at trial." *Schlup*, 513 U.S. at 324.

---

[3]  "[A] claim of ineffective assistance,"..., generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Edwards,* 529 U.S. at 452, quoting *Murray*, 477 U.S. at 489.

12

Mr. Clay has not produced new evidence as a gateway for federal review of the ground, and consequently has not established a fundamental miscarriage of justice, which resulted in the conviction of an actual innocent.

Based on the foregoing, Mr. Clay's first ground for relief is subject to procedural default.

### 2.    Ground for Relief 2

In his second ground for relief, Mr. Clay alleges that his due process rights were violated when the trial court accepted his plead.  (Docket #6 at 5).  Mr. Clay maintains that his plea was not knowing, voluntary and intelligent because there "was no indication that [he] was aware of the nature of the offenses to which he had entered pleas of guilty." *Id.*  Specifically, Mr. Clay alleges that the trial court failed to advise him of the elements of each offense to which he was pleading. *Id.*  Mr. Clay maintains that the  various counts of the indictment did not identify a particular victim and "[w]hile counsel may have known who was involved in each count[,] the court should have inquired of plaintiff whether he understood the nature of the offense together with who was the alleged victim."  *Id.*  Mr. Clay relies upon *Henderson v. Morgan*, 426 U.S. 637 (1976) and *Stumpf v. Mitchell*, 367 F.3d 594 (6th Cir. 2004).

Respondent asserts that Mr. Clay's plea was voluntary under the "totality of the circumstances and applying the principles enunciated in" *Henderson*, 426 U.S. at 645-47.  (Docket #5 at 24).

In addressing Mr. Clay's claim, the state appellate court stated:

In his second assignment of error, Clay challenges his guilty pleas. Under Crim.R. 11(C)(2), before accepting a guilty plea, a trial court must address the defendant personally and 1) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty; 2) inform the defendant of and determine that the defendant understands the effect of the guilty plea, and that the court may proceed with judgment after accepting the plea; and 3)

13

inform the defendant and determine that the defendant understands that he is waiving his rights to a jury trial, to confront the witnesses against him, to call witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial where the defendant cannot be forced to testify against himself.

The trial court must actually explain the constitutional rights mentioned above to the defendant and determine that the defendant understands them. *State v. Ballard* (1981), 66 Ohio St.2d 473, paragraph two of the syllabus. Under the broader standard for rights not protected by the constitution, reviewing courts consider whether the trial court substantially complied with Crim.R. 11(C)(2). *State v. Nero* (1990), 56 Ohio St.3d 106, 108; *State v. Stewart* (1977), 51 Ohio St.2d 86, 93. "Substantial compliance" means that the defendant subjectively understood the implications of his plea and the nature of the rights he was waiving. *Id.* Further, a defendant who challenges his plea on the basis that it was not knowingly, voluntarily and intelligently made must demonstrate prejudice as a result of the alleged error, i.e., that he would not have otherwise made the plea. *Id.; Nero* at 108.

The record indicates that the trial court fully informed Clay of his constitutional rights and made sure that he was knowingly waiving those rights. Clay's argument on appeal concerns the trial court's failure to explain to him the elements of the crimes to which he was pleading guilty and to identify a particular victim of each crime.

However, as this court has held, "courts are not required to explain the elements of each offense, or even to specifically ask the defendant whether he understands the charges, unless the totality of the circumstances shows that the defendant does not understand the charges." *State v. Whitfield*, Cuyahoga App. No. 81247, 2003-Ohio-1504, at ¶14; *State v. Steele*, Cuyahoga App. No. 85901, 2005-Ohio-5541, at ¶11. There is nothing in this record to indicate that Clay did not understand the charges to which he pled guilty.

Additionally, Clay has failed to demonstrate that he was prejudiced in any way by his plea. Clay does not allege that he would not have pleaded guilty if the trial court had defined each element of the offenses or further identified the victims of his crimes. Without a showing of prejudice, Clay's argument fails.

(State Court Decision at ¶¶11-15).

In *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005), the United States Supreme Court stated

that a defendant's

guilty plea would indeed be invalid if he had not been aware of the nature of the charges against him, including the elements of the aggravated murder charge to

14

which he pleaded guilty. A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid.

However, the *Bradshaw* Court also noted that it has

never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel.

"Further,'[w]here a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.'" *West v. Bradshaw*, 2007 WL 2780506 (N.D. Ohio 2007) (Gaughan, J.), quoting *Stumpf*, 545 U.S. at 183.

Although Mr. Clay asserts that the trial court did not "recite the elements of any offense," and/or did not state which victim was associated with which offense, Mr. Clay has not argued that the trial court failed to explain the nature of the charges to petitioner.  (Docket #6 at 5).  He simply states that there "was no determination that plaintiff really understood the nature of the" offenses to which he was pleading guilty.  *Id*.  Mr. Clay stated on the record that he was satisfied with his attorney's representation [4] (Docket #5, Exhibit 18 at 28) and has never alleged ineffective assistance of counsel.  " The Sixth Circuit recognized in *Berry v. Mintzes*, 726 F.2d 1142 (6th Cir.1984), that 'a defendant should be presumed to have been informed adequately by his counsel of the charge to which he pleaded guilty even when the record is devoid of an explanation of the charge by the judge

---

[4] Mr. Clay was represented by Attorney Fred C. Crosby at trial and on appeal.

15

or of a representation by defense counsel that the nature of the charge has been explained to the defendant.'" *Id., quoting Berry, supra*.

"[A] guilty plea must be accompanied by 'an affirmative showing that it was intelligent and voluntary.'" *McAdoo*, 365 F.3d at 494, *quoting Boykin v. Alabama,* 395 U.S. 238, 242 (1969)). In Federal habeas proceedings, "the state generally satisfies its burden by producing a transcript of the state court proceeding," *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The transcript of Mr. Clay's plea colloquy explicitly supports a determination that Mr. Clay's plea was knowing, voluntary and intelligent.

Based on the foregoing, Mr. Clay has failed to establish that his plea was not voluntarily, intelligently, and knowingly made so as to establish that the trial court's acceptance thereof violated clearly established federal law..

### 3.  Ground for Relief 3

In his third ground for relief, Mr. Clay states that his consecutive sentence, was "based on judicial fact-finding where none of the facts were alleged in an indictment or pleading and were not found by the jury or admitted by the petitioner." (Docket #6 at 7). Mr. Clay does not support his claim with any citations to the record and merely argues that because his sentence was greater than the minimum, the trial court must have engaged in judicial fact-finding. Mr. Clay also maintains that the trial court failed to consider the relevant statutory criteria, but does not make any argument related thereto. Respondent states that, "the record reflects that the trial court did not impose non-minimum sentence based upon a judicial finding of some additional fact." (Docket #5 at 27).

The state appellate court stated:

Finally, in his fourth assignment of error, Clay argues that the judge improperly engaged in the type of 'judicial factfinding' prohibited by *Foster* when she sentenced

16

him. He argues that as a first offender, he was entitled to a statutory presumption of a minimum sentence and, because he did not admit anything other than the offenses in the indictment to which he pled guilty, and nothing therein would have subjected him to more than a minimum sentence, any facts relied on by the judge to sentence him to more than the minimum were the result of prohibited judicial factfinding.

We disagree. After *Foster*, trial courts have full discretion to impose a prison sentence within the statutory range and are not required to give reasons for imposing more than the minimum sentence. *Foster, supra*, at paragraph seven of the syllabus. Clay pled guilty to ten fourth degree felonies and one second degree felony. Under Ohio law, second degree felonies are punishable by between two and eight years in prison. Felonies of the fourth degree are punishable by between six and 18 months in prison. R.C. 2929.14(A)(2). The trial court sentenced Clay to serve five years on the second degree felony and 15 months on each of the fourth degree felony counts, and ordered several counts to be served consecutively, for a total sentence of ten years. This sentence is within the statutory range and therefore authorized by law.

(State Court Decision at ¶¶33-34).

With regard to the trial court's consideration of the statutory criteria, the state court stated:

Clay argues that the trial judge did not consider these statutory criteria in sentencing him, thereby denying him due process of law.

The record belies Clay's argument. With respect to the R.C. 2929.11 purposes of sentencing, the trial judge told Clay before sentencing him that he was 'a risk to the rest of us.' She explained that although she was sympathetic to his alleged rape by his father, 'I can't use that in my evaluation of your risk to the public as an excuse. It may be * * * something you might use for treatment, to help yourself have a better life, but that is not a mitigating factor to me when I'm evaluating the protection of the public and the punishment for the offender.'

The record also reflects that the trial judge considered the factors set forth in R.C. 2929.12(B). Specifically, with respect to the seriousness of Clay's conduct, she noted that the victims were traumatized at a young age and 'now the rest of us will have to worry the rest of their lives how that trauma will be acted out in their lives.' *See* R.C. 2929.12(B)(1) and (2).

(State Court Decision at ¶¶30-32).

"Although the Ohio Supreme Court [in *Foster* ] has ruled that the imposition of consecutive

sentences based on judicial fact-finding violates *Blakely*, it is not at all clear that the U.S. Supreme

17

Court would agree." *Cobbin v. Hudson*, 2008 WL 552484 (N.D. Ohio 2008) (Polster, J.); *accord, Stalnaker v. Bobby*, 589 F.Supp.2d 905 (N.D. Ohio 2008) (Polster, J.)  "While recognizing that different federal district courts in Ohio have rejected and accepted claims based on *Blakely* violations in Ohio sentencing, the *Cobbin* court pointedly concluded that because there was no clearly established teaching from the United States Supreme Court on the issue, it would be difficult for a federal habeas court to find that an Ohio decision upholding the imposition of consecutive sentences based on predicate judicial findings of fact was contrary to, or an unreasonable application of, any clearly established federal law." *Sanchez v. Konteh*, 2009 WL 539710 (N.D. Ohio 2009) (Gaughan, J.), *citing Cobbin*, at *3.  *Accord, Wentling v. Moore*, 2008 WL 2778510 (N.D. Ohio 2008) (Boyko, J.) ("giving a court full discretion to select any sentence within a range of sentences for whatever reason it deems appropriate, *even if the court engages in judicial fact-finding in reaching its sentencing determination,* does not violate the holding in *Blakely.*" (Emphasis in original)).  *See also*, *Cvijetinovic v. Eberlin*, 617 F.Supp.2d 620, 654 (N.D. Ohio 2008)(O'Malley, J.) (citing *Cobbin, supra*, and noting that the "United States Supreme Court has not ruled that the imposition of consecutive sentences, based on judicial fact-finding or not, violates the Sixth Amendment; nor has it extended *Apprendi, Blakely*, or *Booker* to consecutive sentences.").  *But see, Evans v. Hudson,* 2008 WL 1929983, at *6 (N.D. Ohio 2008)(Lioi, J.)(stating that *"Blakely* could be violated by the judicial finding of facts beyond those 'traditionally within the judge's province during sentencing[.]'").   Accordingly, even if Mr. Clay presented evidence that the trial judge engaged in judicial fact-finding, such does not violate Sixth Amendment protections.

As to Mr. Clay's argument that the trial court failed to consider the statutory factors set forth in O.R.C. 2929.11 when it sentenced him, Mr. Clay does not support his claim with any facts, law,

18

or argument.  Moreover, a review of the record, as noted in the State Court Decision, indicates otherwise.

Based on the foregoing, Mr. Clay has failed to establish that his sentence and/or the procedure by which it was determined and imposed  violates clearly established federal law.

### 4.      Ground for Relief 4

In his fourth ground for relief, Mr. Clay "contends that he was convicted of offenses that occurred during the marital relationship." (Docket #6 at 10).  Mr. Clay maintains that certain facts were not in the record [5] to support the appellate court's determination that certain conduct for which Mr. Clay was convicted "did not occur during the marital relationship." *Id.*    Respondent argues "that the state appellate court found **as a factual matter** that the criminal acts (as alleged in counts 1, 10, 11, and 12) occurred before Mr. Clay and K.B. were married[,]" and as such is entitled to a presumption of correctness. (Emphasis in original). (Docket #5 at 31-32).

In considering this issue, the state appellate court stated:

In his fifth assignment of error, Clay contends that his convictions for gross sexual imposition, unlawful sexual conduct with a minor, and pandering sexually-oriented material involving a minor, with respect to K.B., involved consensual conduct between married partners, something which the government cannot make criminal. Clay's argument is without merit.

Clay and K.B. were married on June 4, 2004. Count one, gross sexual imposition, occurred between May 31, 2003 and September 30, 2003, before Clay and K.B. were married. Counts ten, 11, and 12, unlawful sexual conduct with a minor, occurred in April and May, 2004, before Clay and K.B. were married. The indictment for these counts, to which Clay admitted his guilt, specified that the victim involved in each count was not Clay's spouse. Because Clay was not married to K.B. at the time of

_____

[5]  Mr. Clay states that the prosecutor conceded that he was married to K.M. and that he was legally married in South Carolina.  (Docket #6 at 12).  Therefore, Ohio was required to honor his marriage "[r]egardless of whether the court agreed that marriage was sanctioned by state law at a certain age." *Id.*  Mr. Clay did not set forth on state appeal or in his habeas petition which counts were based on conduct  that allegedly occurred after he was married.

19

these offenses, any argument that these counts attempted to criminalize a sexual relationship between husband and wife is specious.

The time frame alleged in the indictment for count 13, pandering sexually-oriented material involving a minor, is July 2004 through August 2005. Although Clay and K.B. were married during this time period, the charge relates to images that were taken prior to the marriage, when K.B. was 13 years old. Thus, the criminal activity was not between consensual married partners, but between Clay and a victim he later married. Accordingly, Clay's fifth assignment of error is overruled.

(State Court Decision at ¶¶35-37).

28 U.S.C.A. §2254(e)(2), states that, "i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Mr. Clay has not attempted to rebut the presumption and merely argues that there is nothing in the record to support the state's court's factual determination that certain conduct occurred before he was married. [6]

Based on the foregoing, Mr. Clay has failed to establish that the state appellate court's determination that the conduct at issue occurred before Mr. Clay was married violated a clearly established federal law or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) and (2).

### 5.   Ground for Relief 5

_____

[6] Even if Mr. Clay had attempted to rebut the presumption, the record supports the trial court's findings. Defendant pled guilty to counts 1, 10, 11, 12, 14, 15, 16, 17, 18, and 19. (Docket #5, Exhibit 3). Counts related to K.B., Mr. Clay's wife, are 1, 10, 11, and 12. (Docket #5, Exhibit 1). As set forth in the indictment to which Mr. Clay pled guilty, counts 1, 10, 11, and 12 relate to sexual conduct between Mr. Clay and Jane Doe I, not Mr. Clay's spouse, in March - May 2004. *Id.* During the sentencing hearing, Mr. Clay's counsel stated that Mr. Clay and K.B. "were married on June 4, 2004." (Docket #5, Exhibit 18 at 66).

20

In his fifth ground for relief, Mr. Clay asserts that the trial court's "determination that he was a sexual predator without the presentation of evidence violated his rights of due process of law." (Docket #6 at 12).  Respondent asserts that Mr. Clay's claim is not cognizable in federal habeas corpus because this Court may only consider Mr. Clay's petition to the extent it seeks relief from illegal custody.  (Docket #5 at 10).  Respondent states that classification as a sexual predator is unrelated to the issue of custody. *Id.*  Respondent also notes that under the Adam Walsh Act, O.R.C. §2950.01(E)-(G), classification is automatic "based on the offense for which an individual is convicted[,]" thereby rendering Mr. Clay's claim moot. [7]  *Id.*

"The Sixth Circuit has held that a prisoner challenging the application of Ohio's sexual predator law, even a prisoner who is currently incarcerated, fails to satisfy the 'in custody' requirement necessary to obtain habeas relief." *Jones v. Beightler*, 2009 WL 1652131 (N.D. Ohio) (Boyko, J.), citing *Leslie v. Randle*, 296 F.3d 518, 520-22 (6th Cir.2002) (reasoning that Ohio's sexual-predator statute places no constraints on a person's movement or ability to engage in legal activities).  *See also Thomas v. Morgan*, 109 F.Supp.2d 765, 767 (N.D. Ohio 2000) (Potter, J.) (stating that "the classification of a sex offender as a sexual predator is a collateral disability resulting from a conviction and thus does not satisfy the 'in custody' requirement of federal habeas

---

[7] Respondent states that under the Adam Walsh Act, "any individual who was in a state penal institution on December 1, 2007, for a sexually oriented offense was reclassified based on this new tier system, with the new classification taking effect on January 1, 2008." (Docket #5 at 10). Respondent asserts that Mr. Clay was in prison on December 1, 2007, "was reclassified and now is a tier III offender and not a sexual predator as he argues," rendering Mr. Clay's claims moot.  *Id.* In his traverse, Mr. Clay respondes to this argument stating that since his original classification was unconstitutional for the reasons stated, any reclassification under the Adam Walsh Act would similarly be unconstitutional.  (Docket #6 at 12).  Mr. Clay's petition, however, does not argue that his status as a Tier III offender under the Adam Walsh Act is contrary to clearly established federal law.  Neither did the state appellate court address any error related to reclassification under the Adam  Walsh Act.

21

corpus.").  *See also, Ratliff v. Jefferys*, 2007 WL 4248173 (N.D. Ohio)(O'Malley, J.); *Richter v. Jeffrey*, 2007 WL 2572250 (N.D. Ohio)(Adams, J.); *Carnail v. Hudson*, 2006 WL 3757454 (N.D. Ohio)(Wells, J.).

Based on the foregoing, Mr. Clay's fifth ground for relief is not cognizable in Federal habeas corpus review.

### III.    *CONCLUSION AND RECOMMENDATION*

Following review of the arguments raised in the petition and applicable law, petitioner has not demonstrated that he was in custody pursuant to state court judgment that resulted from a decision that violated clearly established federal law or involved in an "unreasonable application" of federal law as determined by the Supreme Court of the United States.  See 28 U.S.C. §2254(d)(1). Further, there has been no demonstrated need for an evidentiary hearing and the petition for habeas corpus relief under 28 U.S.C. §2254 should be denied and dismissed.

/s/James S. Gallas
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: 8/14/2009